UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
KAI JING MAI,

                     Plaintiff,

                - against -

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION and KINGS
COUNTY HOSPITAL CENTER,

                     Defendants.
-------------------------------------------------------- x

**MEMORANDUM & ORDER**

15 CV 4676 (RJD) (RLM)

DEARIE, District Judge

      Plaintiff Kai Jing Mai, a former attending physician at Kings County Hospital Center ("KCHC"), which is operated by New York City Health and Hospitals Corporation ("HHC"), brings this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of the Due Process Clause of the Fourteenth Amendment and breach of contract. She alleges that she had a protected property interest in her employment that was taken without due process and a contractual right to such employment that was breached when KCHC placed her on pre-hearing suspension. Defendants move to dismiss the complaint pursuant to Rule 12(b)(6). For the reasons set forth below, the motion to dismiss is granted.

## BACKGROUND

      The following facts are alleged in the complaint. Plaintiff is an optometrist and former attending physician at KCHC. Plaintiff began working in 2006 and in March 2014, she was reappointed to the position for the period from April 1, 2014, to March 31, 2016.

      On or about June 4, 2014, plaintiff alleges she received a letter from a "Labor Relations Officer" of the hospital that instructed her to report to a specified doctor at a specified time and

location to receive an evaluation of her fitness to perform her duties. Plaintiff presented the notice to her supervisor at KCHC, who told plaintiff she could disregard the letter or see the doctor if she desired. Out of an abundance of caution, plaintiff went to her personal doctor for an evaluation.

On or about June 19, 2014, plaintiff was informed that she was suspended and prohibited from returning to work at the hospital. All of plaintiff's privileges at the hospital were revoked and she did not receive any salary or benefits from that time forward.

On or about July 1, 2014, plaintiff received another notice from the hospital, which included several charges against her and informed her of an upcoming disciplinary conference on July 2, 2014.[1] Plaintiff contacted her union representative, who began negotiations with the hospital to try to resolve the dispute. Over the following months, plaintiff repeatedly contacted her union representative and was told that negotiations were ongoing.

On or about November 19, 2014, plaintiff filed a notice of claim against the defendants for, among other things, wrongful suspension, violation of her due process rights, and property loss, claiming $600,000 in damages. On January 8, 2015, plaintiff resigned from the hospital to "mitigate damages," because the suspension "threatened the plaintiff's ability to renew her license and/or maintain her status as a service provider in some health care insurance networks." Compl. ¶ 19, ECF No. 1.

Plaintiff filed this lawsuit on August 10, 2015. She alleges violations of due process and breach of contract and she seeks $600,000 in compensatory damages and $300,000 in punitive damages.

---

[1] The parties have offered no indication as to whether the hearing scheduled for July 2, 2014 actually took place.

2

DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "'enough facts to state a claim to relief that is plausible on its face.'" Brown v. Daikin Am. Inc., 756 F.3d 219, 225 (2d Cir. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In reviewing the complaint, this Court "accept[s] all well-pleaded allegations in the complaint as true [and] draw[s] all reasonable inferences in the plaintiff's favor." Chabad Lubavitch of Litchfield Cty. Inc. v. Litchfield Historic Dist. Comm'n, 768 F.3d 183, 191 (2d Cir. 2014) (second alteration in original) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A. Due Process Claim

"The Supreme Court has established that '[w]e examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'" Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir. 1994) (alteration in original) (quoting Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). Defendants do not dispute plaintiff's property interest in her employment, but argue that plaintiff had available avenues sufficient to satisfy her due process rights. Specifically, defendants argue that plaintiff was provided with a pre-deprivation notice asking her to see a specialist but she ignored this letter and saw her own doctor instead. Plaintiff was then notified that she was being suspended and given a hearing date. Plaintiff was represented by her union in ongoing negotiations with HHC, but voluntarily resigned while the negotiations

3

were ongoing. Plaintiff did not plead that she filed for any post-deprivation relief, in particular, she did not bring a petition pursuant to New York C.P.L.R. Article 78 challenging any of the decisions made by HHC.

Plaintiff responds that she was suspended without pay before any meaningful hearing was given, and that the availability of a post-deprivation hearing does not alleviate the due process violation because of the severity of her deprivation. On this point, plaintiff cites Goldberg v. Kelly, 397 U.S. 254 (1970), where the Supreme Court found New York City's deprivation of the plaintiff's welfare benefits without a pre-deprivation hearing violated due process. Goldberg's outcome relied specifically on that fact that welfare benefits are uniquely important benefits, and deprivation of welfare without a hearing "may deprive an eligible recipient of the very means by which to live while he waits." Id. at 264. Plaintiff, however, argues that her own situation is akin to that of the plaintiff in Goldberg because "Mai has built a life and maintains a standard of living in accordance with her earnings from [KCHC]." Pl. Mem. 8, ECF No. 51. Due to this suspension, she is "facing the same difficulties to meet her daily needs after she was suspended without pay." Pl. Mem. 10.

Plaintiff also argues that the question of whether she was forced to resign is a question of fact. In determining the nature and length of a hearing, she argues, the Court must "balance the importance of the private interest and the length or finality of the deprivation [against] the likelihood of governmental interests involved." Logan v. Zimmerman Brush Co., 455 U.S. 422, 434 (1982). Plaintiff argues that an Article 78 hearing would not have provided an adequate safeguard because plaintiff's interest in her livelihood was "unarguably great" and she had been forced to wait six months while the union's negotiations were ongoing. This wait, she argues, amounted to a forced discharge.

4

In the Second Circuit, "there is no due process violation where . . . pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." Adams v. Suozzi, 517 F.3d 124, 128 (2d Cir. 2008). Moreover, "the failure to take advantage of [the collective bargaining] procedure forecloses a due process argument." Gonzalez v. City of New York, 135 F. Supp. 2d 385, 398 (E.D.N.Y. 2001) (citing Narumanchi v. Board of Trustees of Connecticut State Univ., 850 F.2d 70, 72–73 (2d Cir.1988)).

The Second Circuit has also held that the availably of a post-deprivation hearing under Article 78 of the C.P.L.R. satisfies the requirements of due process. See Locurto v. Safir, 264 F.3d 154, 175 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes."); Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) ("Where a pre-deprivation hearing is impractical and a post-deprivation hearing is meaningful, the State satisfies its constitutional obligations by providing the latter. . . . Where, as here, Article 78 gave the employee a meaningful opportunity to challenge the voluntariness of his resignation, he was not deprived of due process simply because he failed to avail himself of the opportunity.").

Plaintiff's due process claim is without merit. She received notice of her suspension on July 1, 2014 and was informed that a hearing would take place the next day. Shortly afterward, her union began negotiations with defendants were ongoing until plaintiff resigned her position at KCHC. Plaintiff did not allow the grievance procedure to come to completion, nor did she pursue any post-hearing relief in the form of an Article 78 petition. The availability of these grievance mechanisms, and plaintiff's failure to utilize them, foreclose her due process claim.

Plaintiff's reference to Goldberg is unpersuasive. Plaintiff ignores the fact that Goldberg itself narrowly circumscribed its holding to welfare beneficiaries who, if deprived of benefits without hearing, would have trouble meeting their day-to-day needs. 397 U.S. at 264. Goldberg explicitly stated that its plaintiff's circumstances differed from a situation where a government employee was terminated from his or her employment.[2]

Where, as here, the plaintiff had meaningful access to pre- and post-deprivation hearings, due process is not violated. Defendants' motion to dismiss the due process claim is granted.

B. Breach of Contract Claim

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996).

Defendants argue that no contract exists between plaintiff and defendants. Defendants note that, to the extent the complaint is referring to the collective bargaining agreement between HHC and plaintiff's union, plaintiff may not sue HHC directly and must instead proceed against HHC through her union in accordance with the grievance procedures in the collective bargaining agreement.

Plaintiff responds that, pursuant to her reappointment on March 31, 2014, she had a contractual right to work as an attending physician at the hospital until at least March 31, 2016. She claims that defendants unilaterally breached their contractual agreement with her on June 19,

---

[2] As Goldberg noted, "the crucial factor in this context—a factor not present in the case of the blacklisted government contractor, *the discharged government employee*, the taxpayer denied a tax exemption, or virtually anyone else whose governmental entitlements are ended—is that termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits." 397 U.S. at 264 (emphasis added).

6

2014, by placing plaintiff on pre-hearing suspension, prohibiting her from returning to work, and denying her salary and benefits. At a minimum, plaintiff states that she has not been paid for the period from June 12, 2014 to June 19, 2014, which is the pay period immediately before she was suspended.

Under New York law, "when an employer and a union enter into a collective bargaining agreement that creates a grievance procedure, an employee subject to the agreement may not sue the employer directly for breach of that agreement but must proceed, through the union, in accordance with the contract." Bd. of Educ., Commack Union Free Sch. Dist. v. Ambach, 70 N.Y.2d 501, 508 (1987). "[O]nly when the union fails in its duty of fair representation can the employee go beyond the agreed procedure and litigate a contract issue directly against the employer." Id. This process is analogous to the procedure required by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), whereby a plaintiff may sue both her union for breach of its duty of fair representation and her employer, but only after exhausting the grievance process. See McLeod v. Verizon New York, Inc., 995 F. Supp. 2d 134, 142 (E.D.N.Y. 2014).

Plaintiff has not alleged that her union failed in its duty of fair representation. Because plaintiff voluntarily resigned from her post rather than proceeding through the dispute resolution procedure specified in her collective bargaining agreement, plaintiff fails to state a claim for breach of contract. Defendants' motion to dismiss is granted.

## CONCLUSION

As set forth above, the complaint is dismissed for failure to state a claim. The clerk is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
       October 16, 2017

s/ RJD
_____
RAYMOND J. DEARIE
United States District Judge